OPINION OF THE COURT
Elliott Wilk, J.
This is a libel action arising out of a series of articles which *572 appeared in the New York Times between January 1985 and February 1986, concerning Elliot Gross’ performance as Chief Medical Examiner of the City of New York. The articles focused primarily on the handling of numerous controversial autopsies performed by the Medical Examiner’s office under plaintiff’s supervision.
In a decision dated June 6, 1988, I dismissed the complaint as against defendants Drs. John Grauerholz, Robert Wolf, Joan Obe, Jon Pearl, Siegfried Oppenheim, Faruk Presswala, Cyril Wecht, Lowell Levine, and Michael Baden, all of whom were quoted in the Times articles.[1] Defendants the New York Times Company, Philip Shenon, Sam Roberts, Abraham Rosenthal and Peter Milones (the Times defendants) now move, pursuant to CPLR 3211 (a) (7), for an order dismissing the complaint.
Plaintiff contends that the articles, authored by New York Times reporters Shenon and Roberts, charge him with civil and criminal misconduct, negligence and incompetence. He asserts that the articles were based on false information and their publication constituted defamation of his character and reputation. Rosenthal and Milones were the editors who supervised and controlled the publication of the articles.
The primary focus of the articles is plaintiff’s handling of 11 autopsies, 7 of which involved people who died while in police custody. The articles explored and reported on charges that had been made by pathologists and others that plaintiff had reached incorrect conclusions concerning the cause of death in a number of cases involving people who had died while in police custody, and that the procedures followed by plaintiff in those cases were improper. Some of these incidents, such as the deaths of Eleanor Bumpers and Michael Stewart, received substantial publicity and generated community concern and outrage about police behavior.
According to plaintiff, the import of the articles was that plaintiff was incompetent as a forensic pathologist; that he was unfit to act as the Chief Medical Examiner; that he violated a variety of statutes by improperly altering autopsy reports without regard to physical evidence, and that he covered up cases of police brutality. Five separate governmental investigations were instituted in response to the New York Times series, including investigations by the office of the *573 Mayor, the New York State Department of Health, the office of the State Special Prosecutor and the United States District Attorney for the Southern District of New York.
On a motion to dismiss for failure to state a cause of action, the court is obligated to accept the material allegations as true (Morone v Morone, 50 NY2d 481, 484 [1980]), and the complaint is deemed to allege whatever can be fairly and reasonably implied (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). If, upon any reasonable view of the stated facts, plaintiff would be entitled to recover for defamation, the cause of action must be upheld (Silsdorf v Levine, 59 NY2d 8, 12 [1983], cert denied 464 US 831 [1983]; 219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509 [1979]).
As a first cause of action, plaintiff alleges that the publication of the January 27, 1985, 4,924-word article entitled "Chief Medical Examiner’s Reports in Police Custody Cases Disputed” was written by Shenon, and published, with actual malice and willful intent to injure and damage plaintiff, without regard to the truth or falsity of the statements and without due consideration for the standards of responsible information gathering and dissemination. Excerpts containing the alleged false and defamatory statements in the article are recited in the complaint.
The second, third, fourth, and fifth causes of action recite the allegedly false and defamatory statements appearing in the January 28, 1985, January 29, 1985, February 5, 1985 and February 4, 1985 articles, respectively. Shenon authored the January 28 and 29, 1985 and February 5, 1985 articles. The February 4, 1985 article entitled "8 Cases: the Chief Medical Examiner’s Explanations and Issues Involved,” included publication of plaintiff’s statements "explaining his position on some of the cases for which he has been criticized.” The article provides a "brief account of each case” and a "description of the issues involved.” It is these statements that plaintiff challenges as false and inaccurate and contends were published in reckless disregard of the truth and in a grossly irresponsible manner, causing injury to plaintiff’s name, fame, credit and reputation.
The eighth, ninth, tenth, eleventh, and twelfth causes of action concern articles written by New York Times reporter Roberts published on August 1, 1985, August 2, 1985, August 3, 1985, December 13, 1985 and December 14, 1985, respectively, each of which allegedly contains false and defamatory *574 statements about plaintiff. The thirteenth cause of action concerns an article published on February 23, 1986. Plaintiff recites the purported defamatory material in his complaint for each cause of action and avers that such publications were in utter disregard of the truth or falsity of the contents and, as such, were grossly irresponsible. Plaintiff claims the publications caused grave harm to his reputation and character.
Defendants state that the first through fifth and eighth through thirteenth causes of action are legally insufficient.[2] They contend that the statements and criticisms to which plaintiff objects are opinions about causes of death and autopsy and reporting procedures. As such, they are not sufficiently factual to serve as a basis for a defamation action. They observe that most of these statements, when attributed to former defendants in this action, were found to be constitutionally protected speech in my prior decision and order dated June 6, 1988.
The thrust of the Times articles, and the core assertion with which plaintiff takes issue, is that plaintiff, swayed by unprofessional motives, issued misleading and inaccurate reports. Plaintiff denies that he was negligent or incompetent. He challenges the implication that he intentionally filed inaccurate reports to protect police misbehavior.
The Times defendants, for purposes of this motion, do not dispute plaintiff’s contentions with respect to the statements and implications contained in the articles. They argue that the challenged statements are the essence of nonactionable opinion, as opposed to "assertions of provably false fact”. (Immuno AG. v Moor-Jankowski, 77 NY2d 235, 245 [1991].) They claim that their constitutionally protected right to report on public affairs includes the right to comment on, question or impugn the motives of public officials. They argue that the protection of this aspect of journalism is necessary to ensure public access to important information. I agree.
The Times defendants’ criticisms of plaintiff fall into three categories, questioning (1) the soundness of his judgment regarding policy and procedures used in performing and reporting autopsies; (2) the correctness of his conclusions concerning causes of death in certain cases, and (3) the propriety of his motives underlying the actions referred to above.
*575 The first two categories relate to plaintiff’s performance of his official functions as Medical Examiner. Those functions entail the exercise of medical judgment and the rendering of expert medical opinion. (See, e.g., Administrative Code of City of New York § 17-203; Matter of Gross v Ambach, 71 NY2d 859, 861 [1988].) I have already found that the individuals quoted by the Times defendants who expressed opinions which contradicted or criticized those of the plaintiff could not, as a matter of law, be found liable for defamation. Those nonactionable comments and opinions cannot now be deemed to constitute actionable, provably false factual assertions when attributed to the Times defendants. (See, Philadelphia Newspapers v Hepps, 475 US 767 [1986], cited approvingly in Milkovich v Lorain Journal Co., 497 US —, 110 S Ct 2695, 111 L Ed 2d 1 [1990].) The Times defendants, like the individual speakers and the plaintiff himself, are necessarily relegated to the realm of speculation and opinion when discussing causes of a death or autopsy policies and procedures. This is especially true when there is disagreement within the medical community.
The Times defendants set forth in the articles a thorough recitation of the factual predicates underlying their opinions, including eyewitness testimony and expert medical opinion. This suggests even more strongly that the conclusions complained of, when attributed to the Times defendants, are not actionable. The Times readers were provided not only with the speculations and conclusions of the individuals quoted and of the Times defendants, but with the factual bases for those conclusions. (Cf., Sprecher v Dow Jones & Co., 88 AD2d 550, 551 [1st Dept 1982], affd 58 NY2d 862 [1983] [matters involving editorial judgment are not actionable].)
The third category includes the Times defendants’ conclusions and reports that expert and eyewitness opinions critical of plaintiff’s performance raise questions about the motives underlying his conduct. The recurrence of allegations of incompetence and negligence, particularly in cases of deaths of individuals while in police custody, led the Times defendants, and some of the people quoted, to take explicit note of the pattern and to speculate that plaintiff’s alleged mishandling of these cases was intentional.
Plaintiff contends that the Times defendants’ assertion that he intentionally mishandled cases, particularly those involving custodial deaths, even if not otherwise actionable as an *576 assertion of provably false verifiable fact, is actionable because the criticism constitutes an accusation of criminal conduct.
Defendants stated that plaintiff issued "misleading or inaccurate” autopsy reports, and speculated that he may have done so intentionally. Under our Penal Law, base motive may transform behavior which is merely negligence or incompetence into a crime. (See, Penal Law §§ 195.00 [official misconduct], 195.05 [obstructing governmental administration]; art 175 [falsification of written statements].) Thus, the addition of motive to the alleged inaccuracies in plaintiff’s official conduct introduced the possibility of criminality.
Factual assertions charging the commission of criminal conduct cannot be brought within the cloak of constitutional protection by the expedient of using opinion phraseology. (See, e.g., Silsdorf v Levine, 59 NY2d 8, 16, supra; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 382 [1977], cert denied 434 US 969 [1977].) Conversely, "inquiry into motivation” which, unlike an accusation of specific conduct, is not provably false, verifiable factual speech (Rinaldi v Holt, Rinehart & Winston, 42 NY2d, at 382) does not lose the mantle of constitutional protection afforded nonactionable criticism simply because the injection of the element of intent converts a charge of incompetence or negligence into an accusation with criminal overtones. The presence of the implication of criminality is obviously relevant to the question of whether speech is defamatory. It does not, however, alter the constitutionally based analysis which limits judicial relief to assertions of provably false, verifiable fact. (See, Immuno AG. v Moor-Jankowski, supra.)
Rather than eliminating or reducing the level of constitutional protection to be afforded the challenged articles, the added dimension of possible criminality underscores the importance of shielding the Times defendants’ statements from attack. As Chief Medical Examiner, plaintiff was vested with a responsibility to the public. The intentional issuance of misleading or inaccurate reports would constitute an abuse of a public trust and an obstruction of justice. That such conduct defines a crime is a testament to the importance of the Medical Examiner’s duties to the well-being of the community, and an indication of the significance of his official government role.
The Times defendants’ speculation concerning plaintiff’s motives, which converted a charge of incompetence into one of *577 criminal conduct, cannot, therefore, be the factor which renders the challenged articles actionable. The strength of the public’s interest in deterring, exposing and punishing official misconduct, which underlies its treatment as a crime, emphasizes the corresponding importance of protecting the Times defendants’ ability to report on it freely.
Plaintiffs position, that the criminal component deprives the articles of constitutional protection, contravenes the central concern underlying constitutionally based free speech guarantees. At the core of the traditional and evolving constitutional doctrine imposing limits on the common law of defamation is the desire to avoid obstacles to criticism of governmental conduct, and the corresponding absolute bar to prosecutions for libel on government. (See, New York Times Co. v Sullivan, 376 US 254, 291 [1964].)
In his official capacity as Chief Medical Examiner, plaintiff was vested with the responsibility for rendering professional judgments that play a central role in the operation of our system of criminal justice. His activities in the primary area upon which the Times defendants focused — inquiry into, and the rendering of opinions concerning, deaths occurring in custody of the government — entailed the most sensitive of concerns from the perspective of the public’s ability to criticize and react to possible misconduct on the part of our government. As a public official with central responsibility for exercising discretion in drawing conclusions and issuing judgments in this context, plaintiff cannot be permitted to shield from public scrutiny official opinions which played a key role at a critical stage of review in cases involving potential abuse of government power.
Foreclosing criticism of plaintiffs official performance of his sensitive responsibilities by sanctioning a defamation action premised on defendants’ reporting and expression of opinions differing from those of plaintiff "strikes at the very center of the constitutionally protected area of free expression.” (New York Times Co. v Sullivan, 376 US, at 292.) Not only does it raise "the possibility that a good-faith critic of government will be penalized for his criticism” (supra, at 292), but it creates a barrier to commentary on a quintessential issue of public concern — the deaths of citizens at the hands of the State — for which the Constitution requires the availability of uninhibited and open debate.
The significance of plaintiffs possible incompetence or mis *578 conduct, as reported by the Times defendants, stemmed not only from plaintiffs status as a government official, but also from his unique role and specific responsibility to expose grave injustices that may have been committed by other members of government. Plaintiffs attempt to transmute the Times defendants’ criticism of his performance in this sensitive and critical governmental capacity into an actionable personal criticism of him, strikes at the heart of the concerns underlying constitutionally based free speech guarantees. (See, New York Times Co. v Sullivan, 376 US, supra, at 292.) To rule that the challenged articles, based on their content, are actionable for defamation, would so insulate the opinion of the Chief Medical Examiner as to effectively render the government the arbiter of truth on issues which, by their very nature, must be open to unimpeded examination, comment and reaction by the public.
For these reasons, I find that the statements challenged by plaintiff constitute speech protected by the Constitutions of the United States and New York State[3] and may not serve as the basis for an action in defamation. Defendants’ motion is granted, and the complaint is dismissed in its entirety.

. Dr. Greetha Natarajan was named as a defendant but was never served.

. Plaintiff concedes that the sixth and seventh causes of action for conspiracy to libel fail to state an actionable claim and consents to the dismissal of the fourteenth and fifteenth causes of action.

. The Free Speech Clause contained in NY Constitution, article I, § 8 is more protective of free expression than that contained in the First Amendment of the US Constitution. (See, Immuno AG. v Moor-Jankowski, supra.)